**E-FILED**
Wednesday, 28 June, 2006  01:15:08 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **BRANDON S. MENDENHALL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | )       **Case No.  05-2018** |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY, sued JoAnne B. Barnhart,** | ) |
| | ) |
| **Defendant.** | ) |

# REPORT AND RECOMMENDATION

In October 2002, an Administrative Law Judge (hereinafter "ALJ") denied supplemental security income payments (hereinafter "SSI") to Plaintiff, Brandon Mendenhall, under Title II of the Social Security Act (42 U.S.C. § 423).  The ALJ found that, although Plaintiff lacked relevant work experience and is impaired by cerebral palsy, this medically determinable impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4.  In addition, the ALJ found that Plaintiff could perform a significant number of jobs in the economy.

In October 2002, Plaintiff filed a Request for Review with the Appeals Council.  In November 2004, the Appeals Council denied Plaintiff's appeal.  In January 2005, Plaintiff filed a Complaint for Judicial Review (#1) against Defendant, Jo Anne Barnhart, the Commissioner of Social Security, seeking judicial review of the Social Security Administration's final decision. In July 2005, Plaintiff filed a Motion for Summary Judgment (#9), and in October 2005, Defendant filed a Motion for an Order which Affirms the Commissioner's Decision (#12).  After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#9)** be **GRANTED** and that Defendant's Motion for an Order which Affirms the Commissioner's Decision **(#12)** be **DENIED**.

# I.  Background

## A.  Procedural Background

Plaintiff first applied for SSI in August 2001, alleging disability due to cerebral palsy, a condition with which he was born.  (R. 60.)  The Social Security Administration denied the application in September 2001.  (R. 26-30.)  Later that month, Plaintiff filed a request for reconsideration, which the Social Security Administration rejected in November 2001.  (R. 31, 33-36.)  Plaintiff filed a request for a hearing by an ALJ in November 2001.  (R. 37.)  In August 2002, the ALJ held a hearing, and Plaintiff, his mother, and a vocational expert appeared and testified.  (R. 31.)  In his October 18, 2002, decision, ALJ John Mondi found that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act because:  (1) despite having cerebral palsy, Plaintiff's condition did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4; (2) Plaintiff's testimony was not totally credible; and (3) Plaintiff had the residual functional capacity to perform light work subject to a number of nonexertional limitations including a prohibition from climbing ladders, ropes, or scaffolds, and from concentrated exposure to hazards; no more than occasional balancing, kneeling, bending, stooping, crouching, crawling, or climbing of ramps and stairs; and limitations in handling and fingering with his left, nondominant hand.  (R. 22.)  The ALJ concluded that Plaintiff was not disabled and therefore he was not eligible for SSI under 42 U.S.C. § 423.

## B.  Medical Background

Plaintiff was born with spastic quadriplegic cerebral palsy that affects primarily the left side of his body.  (R. 139, 153.)  He  has had a number of operations on his legs.  In July 1989, Plaintiff underwent a STA-peg operation on his left foot.  (R. 161.)  Due to that surgery's over-correction, which resulted in a varus deformity of the left foot, Plaintiff underwent a left posterior tibial tendon lengthening and a transfer of the left anterior tibial tendon to the fourth metatarsal.  (R. 149.)  In June 1998, Plaintiff underwent a lengthening of his left Achilles tendon and left hamstring.  (R. 143.)

By October 2000, during Plaintiff's junior year of high school, Dr. Peter Smith noted that Plaintiff "was doing just fine." (R. 139.) At this time, Plaintiff's lower extremities showed a full range of motion, and his upper extremities had full range of passive motion. (R. 139.) Dr. Smith noted that Plaintiff had an impeded gait: he exhibited a right Trendelenburg gait; he "toe walk[ed]" on his left slightly; and he exhibited calcaneal valgus on the left side. (R. 139.) Plaintiff also carried his left upper extremity in a flexed position while walking. (R. 139.) Despite these observations, Dr. Smith's ultimate finding was that Plaintiff was doing very well. (R. 139.)

Plaintiff went to special education classes on and off throughout his schooling, and one of his teachers, Mrs. West, stated in an April 1998 evaluation that she was concerned about his fatigue level and the slowness with which he moved. (R. 114-24, 132-38.) Plaintiff took both the Stanford-Binet Intelligence Scale and WISC-R intelligence test; each of these tests indicated that he had average cognitive ability. (R. 120.) By the end of high school, Plaintiff attended regular class with instruction in the resource room. (R. 180.) However, a 2001 intelligence assessment report stated that Plaintiff may need more time to complete tasks due to delays in motor efficiency. (R. 189.) The assessment recommended that he be given a reduced work load and extra time to complete assignments and tests. (R. 193.) Plaintiff was also excused from physical education class. (R. 192.)

Dr. Lysouvakon performed Plaintiff's most recent medical examination in August 2001. The neurological examination noted that Plaintiff was born with cerebral palsy and was hyperreflexic at the knees and wrists. (R. 195.) Plaintiff had some ataxia: Dr. Lysouvakon observed that Plaintiff had difficulty with the finger to nose test on the left side. Plaintiff was wobbly on the heel to shin test, and he was unable to perform the Romberg test. (R. 195.) There were also signs of atrophy: Plaintiff's left arm and leg were two and three inches smaller, respectively, than his right arm and leg. (R. 195.) In terms of gait, the exam stated that Plaintiff had a severe limp on the left side, but he was able to walk more than fifty feet without assistance. (R. 195.) His gross and fine manual handling was normal on the right side, however, gross manipulation was "limited" on the left side, and fine manipulation - picking up a box, turning a

3

door knob, tying shoelaces, picking up a coin from a surface, buttoning, and writing - was
moderately difficult for Plaintiff when he used his left hand.  (R. 196.)  Plaintiff exhibited no
sign of "fatigue of individual muscles after sustained or repetitive activity."  (R. 195.)  Plaintiff
was oriented as to time, person, and place, and his level of consciousness was normal.  (R. 196.)
Plaintiff was able to handle funds on his own behalf.  (R. 196.)

Based on this examination, Dr. James Graham assessed Plaintiff's Residual Functional
Capacity (hereinafter "RFC") in October 2001.  (R. 197.)  Dr. Graham opined that Plaintiff could
occasionally lift and carry fifty pounds and frequently carry twenty-five pounds.  (R. 197.)
Plaintiff's ability to push and pull was "unlimited, other than as shown for lift and/or carry."
(R. 198.)  Plaintiff could stand, walk, and sit, with normal breaks, for a total of about six hours in
an eight-hour workday.  (R. 198.)  The RFC also included a number of postural limitations:
Plaintiff was prohibited from climbing ladders, ropes, and scaffolds, and was limited to only
occasionally climbing a ramp or stairs, balancing, stooping, kneeling, crouching, and crawling.
(R. 199.)  Dr. Graham also stated that Plaintiff should avoid concentrated exposure to hazards
such as machinery and heights, and that he had only limited handling (gross manipulation) and
fingering (fine manipulation) ability with his left hand.  (R. 200-01.)

### C.  Testimony at the Hearing

At the time of the hearing, Plaintiff was nineteen years old and resided with his parents.
(R. 208, 214.)  He is about 5'10" tall and his normal weight is 110 pounds.  (R. 214.)  In terms of
day-to-day household chores, he assists with "minimal stuff, like maybe put[ting] clothes away."
(R. 214.)  He does not cut the grass or help with lawn maintenance.  (R. 215.)  He does not have
a driver's license, and he testified that he does not think that driving "is something that [he]
could handle."  (R. 215.)  He testified that he "hang[s] out with friends" regularly, and that they
play video games and watch movies.  (R. 215.)

Plaintiff testified that he was a high school graduate and had attended a mixture of
special education and regular classes.  (R. 209.)  According to Plaintiff, these special education
classes were "lenient" in terms of the amount of work he was assigned and the amount of time he

4

had to complete his assignments.  (R. 217.)  He also noted that he attended a "special ed study hall" on a daily basis.  (R. 217.)

Plaintiff testified that he was not currently working and had quit his job at McDonald's two to three weeks prior to the hearing.  (R. 209.)  He had begun working at McDonald's in May 1999.  (R. 209.)  He got the job on his own.  (R. 211.)  He worked one day a week, at most, for three to four hours a day, but he did not work every week.  (R. 209.)  His job consisted primarily of maintenance and cleaning, and he carried boxes weighing up to thirty pounds a few times a day.  (R. 211, 213, 219.)  At times, he carried stacks of trays weighing about twenty to twenty-five pounds to the back of the store.  (R. 219.)  He had quit the job in order to prepare for his planned departure to Florida, where he intended to attend school in hopes of becoming a record producer.  (R. 209.)

Plaintiff claimed that his "left hand has little mobility to none."  (R. 212.)  He is right-handed.  (R. 220.)  He also has difficulty writing and typing and cannot write cursive at all.  (R. 209.)  Because of  these limitations, it "takes [him] forever to complete tasks."  (R. 212.)  Plaintiff also testified that people had difficulty understanding his speech.  (R. 212.)  He said he was a very slow reader.  (R. 209.)   He can read the newspaper, but he does not do so on a regular basis.  (R. 209.)

Plaintiff does not take medication, except for aspirin, which he takes only when his hands hurt.  (R. 212.)  At the time of the hearing, his medical treatment consisted of checkups with doctors at Shriners Hospitals for Crippled Children every six or twelve months.  (R.  214.)

Plaintiff also testified that he suffers significant fatigue.  He estimated the limit of his endurance as being able to walk "maybe a block, block and a half" or less.  (R. 212.)  He has difficulty climbing stairs; it takes him "longer than a normal person" to climb stairs, and he finds climbing stairs exhausting.  (R. 213.)

Plaintiff additionally testified to postural difficulties.  He can sit only for forty-five minutes before his back starts to hurt.  (R. 213.)  He has trouble standing; after standing in one place for about thirty minutes, his back and feet begin to hurt.  (R. 213.)  He also testified to a limited ability to bend and stoop.  (R. 213.)

Plaintiff's mother, Joann Mendenhall, also testified at the hearing.  She testified that Plaintiff planned to attend school in Winter Park, Florida, and to become a record producer. (R. 216.)  She confirmed that Plaintiff attended a mixture of special education and regular classes, and that he received medical treatment.  (R. 217-18.)  She indicated that, in order to transport Plaintiff to Florida, they were cancelling his final medical appointment at Shriners; medical treatment at Shriners only continued up to the age of 18.  (R. 218.)

A vocational expert, Cheryl Hoiseth (hereinafter "VE") also testified at the hearing.  The VE stated that Plaintiff's work at McDonald's did not qualify to be incorporated in an employment history because his employment was brief and irregular.  (R. 221.)  The VE assessed Plaintiff's work at McDonald's as being unskilled and light to medium exertion. (R. 221.)  The ALJ then asked the VE to consider whether an individual of Plaintiff's age and education level, who has been designated as capable of medium work by the reviewing DDS physicians, would be able to continue to work at McDonald's, given nonexertional limitations including a prohibition from climbing ladders, ropes, or scaffolds, and concentrated exposure to hazards; no more than occasional balancing, kneeling, bending, stooping, crouching, crawling or climbing of ramps and stairs; and limitations in handling and fingering with his left, nondominant hand.  (R. 221.)  The VE answered in the negative.  (R. 222.)

The ALJ next asked the VE whether such an individual could perform other jobs in the economy.  The VE responded that such jobs existed, namely cleaner and kitchen helper, numbering approximately 9,900 total in the greater metropolitan area of Chicago.  (R. 222.)  The ALJ asked the VE if Plaintiff's "less than clear" speech would affect her answer, to which the VE answered in the negative.  (R. 222.)

Finally, the ALJ asked the VE about the vocational outlook for an individual who displayed the symptoms testified to by Plaintiff.  (R. 222.)  The VE answered that if she were to take Plaintiff's testimony as fully credible, specifically his testimony claiming to have difficulty bending, stooping, standing, walking, and sitting, such limitations would preclude work. (R. 223.)

### D.  The ALJ's Decision

In determining whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis.  20 C.F.R. § 416.920(a)-(f).  The Secretary must determine in sequence:  (1) whether the claimant is currently employed (or was during the relevant period); (2) whether he had a severe impairment; (3) whether the impairment met or equaled one listed by the Commissioner; (4) whether the claimant could have performed his past work; and (5) whether the claimant was capable of performing any work in the national economy.  *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).  Once the claimant has satisfied the first two steps, he will automatically be found disabled if he suffers from a listed impairment.  If the claimant does not have a listed impairment, but cannot perform his past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. *Pope v. Shalala*, 998 F.2d 473, 477-78 (7th Cir. 1993).

In this case, the ALJ determined that Plaintiff had never engaged in substantial gainful activity and had a severe impairment.  Thus, Plaintiff satisfied steps one, two, and four of the test.  (R. 20.)  However, Plaintiff failed to satisfy step three of the test because his disability did not meet a listed impairment in 20 C.F.R. § 404, Subpt. P, App. 1, Reg. 4.  (R. 19.)  Specifically, although Plaintiff is impaired by cerebral palsy, to meet the listing for cerebral palsy under 20 C.F.R. § 404, Subpt. P, App. 1, § 111.07, the record must show any of the following:  "(a) an IQ of 70 or less; (b) abnormal behavior patterns . . . ; (c) significant interference in communication due to speech, hearing, or visual defect; or (d) disorganization of motor function as described in 11.04(B), characterized as 'significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movement,

7

or gait and station.'" (R. 20.) The ALJ also discounted Plaintiff's testimony regarding his subjective symptoms, including fatigue, as not fully credible in light of the opinions of the reviewing physicians as well as his part-time work activity while attending high school. (R. 22.) Finally, based on the testimony of the VE, the ALJ found that Plaintiff did not satisfy step five of the test because he could perform a variety of other jobs entailing light work, considering his age, experience, and limitations. (R. 19-20.) Thus, the ALJ found that Plaintiff was not disabled according to the Social Security Act and he was not eligible for SSI. (R. 20.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Brooks v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility determinations and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992); *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989). However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

8

### III.  Analysis

Plaintiff argues that substantial evidence does not support the ALJ's decision for the following reasons:  (1) The ALJ improperly discounted Plaintiff's credibility, thus ignoring Plaintiff's mental impairments; (2) the ALJ did not make a proper RFC finding; and, (3) the ALJ's step five decision is flawed because he wrongly found Plaintiff disabled under the grids and misstated VE testimony as to availability of jobs in the area.

### A.  The ALJ Did Not Make a Proper RFC Finding

Plaintiff first argues that the ALJ did not make a proper RFC finding.  Specifically, he contends that the ALJ improperly relied on the state agency RFC determination.  According to Plaintiff, "reliance upon a state agency RFC can *never* be substantial evidence when there is a treating specialist opinion, like there is here, that shows greater limitations."  (# 15, p. 4) (emphasis added).

The Social Security Administration "generally . . . give[s] more weight to opinions from [claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s)." 20 C.F.R. 416.927(d)(1).  A treating source's opinion that is supported by "clinical and laboratory diagnostic techniques" is given controlling weight.  *Id.*  Plaintiff contends that the evidence shows he has "greater limitations" than those listed in the state agency RFC.  However, Plaintiff failed to explain to which evidence he is referring, or to support his contention with reference to the record.  The sole limitation not addressed by the state agency RFC is that of Plaintiff's claim of mental limitations, which as discussed below the Court finds to be unsupported by the record.  Therefore, the ALJ could properly have relied on the state agency RFC assessment.

However, the ALJ's ruling was not consistent with the state agency RFC.  The state agency RFC assessment shows that Plaintiff is able to lift up to fifty pounds occasionally, and up to twenty-five pounds routinely.  (R. 197.)  Under 20 C.F.R. § 404.1567(c), such a determination

would put Plaintiff at the medium work level.  In contrast, the ALJ ultimately found that Plaintiff had the RFC to perform light work.  (R. 21.)  Moreover, the ALJ does not explain why his RFC differs from the state agency RFC; he simply states that he has found "claimant [to be] limited to a restricted range of light work (instead of the medium work, as had been assessed by the reviewing DDS physicians)."  (R. 21.)  Therefore, the ALJ implicitly rejected Dr. Graham's RFC assessment without explaining his reasoning.

Principles of administrative law require the ALJ to rationally articulate the grounds for his decision.  *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).  Moreover, the Court must limit its review to the reasons supplied by the ALJ.  *Id*.  As a result, the ALJ has a duty to "build an accurate and logical bridge from the evidence to [his] conclusion."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  Here, the ALJ crossed the river from medium work to light work without such a bridge.  Where an ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the Court must remand.  *Steele*, 290 F.3d at 940. Accordingly, the Court recommends remanding this case to the ALJ for articulation of his reasoning on this issue.

### B.  The ALJ's Step Five Decision is Flawed

Plaintiff next argues that the ALJ's step five decision is flawed for the following reasons: (1) the ALJ wrongly used the medical-vocational grids to determine Plaintiff's disability status; and, (2) the ALJ mischaracterized VE testimony regarding availability of jobs in proximity of Plaintiff's residence.

Plaintiff first contends that the ALJ improperly relied on the medical-vocational grids when he determined that Plaintiff is not disabled.  (#10, pp. 13-14.)  According to Plaintiff, use of the grid to determine disability is improper where, as here, the claimant suffers from significant nonexertional limitations.  Plaintiff is correct that the ALJ should not use the grids as the sole determining factor of whether a claimant is disabled where that claimant has significant nonexertional limitations.  SSR 96-9p.  However, SSR 96-9p states that even where a claimant

has a nonexertional limitation, the medical-vocational grids may be used as "a framework for considering the extent of any erosion of the sedentary occupational base." *Id.* In this case, the ALJ's decision explicitly notes that he used the medical-vocational grids as a framework, along with VE testimony, in order to reach his determination. Because the ALJ did take into account nonexertional limitations in his determination, he did not err by considering the medical-vocational grids.

Plaintiff also contends that the ALJ erred by relying on the VE's testimony to support his step five finding. The ALJ stated that the VE's testimony "is persuasive that jobs exist in significant numbers that claimant can perform." (R. 21.) However, the ALJ found that Plaintiff had the RFC to perform light work, yet he never asked the VE about the availability of light work to an individual with Plaintiff's nonexertional limitations.

Plaintiff is correct. The ALJ's hypotheticals to the VE asked about the availability of medium work for an individual with Plaintiff's nonexertional limitations, whether Plaintiff's "less than clear" speaking would affect her answer, and whether Plaintiff would be able to work if his testimony were fully credited. (R. 221-22.) At no time during the hearing did the ALJ ask the VE about the availability of light work for an individual with Plaintiff's nonexertional limitations. Therefore, the ALJ erred by finding that "claimant has the residual functional capacity to perform a significant number of jobs at the light exertional level work, consistent with *probative testimony from a vocational expert . . . .*" (R. 22) (emphasis added).

Defendant's explanation that the ALJ's reference to medium rather than light work in his hypotheticals to the VE is harmless error is not persuasive. "[T]he test [for entitlement to social security benefits] is whether [claimant] is so disabled that there are no jobs in reasonable proximity to where she lives that she is physically able to do." *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). Moreover, the Commissioner bears the burden at step five of showing that the claimant can perform some other job. *Pope*, 998 F.2d at 477-78. Because the ALJ introduced no evidence to support his conclusion that the "claimant has the residual

11

functional capacity to perform a significant number of jobs at the light exertional level work"
(R. 22), the Commissioner did not meet his burden at step five.  Therefore his conclusion that
Plaintiff is not disabled cannot stand.  Accordingly, the Court recommends remanding this case
for further proceedings.

### C.  The ALJ Improperly Dismissed Plaintiff's Credibility

When the ALJ determined that Plaintiff was able to perform light work subject to a
variety of nonexertional limitations, he discounted Plaintiff's testimony concerning certain
symptoms, including fatigue, as not fully credible.  (R. 22.)  Plaintiff argues that this credibility
determination is improper because:  (1) the ALJ improperly considered Plaintiff's part-time work
in making his credibility determination; (2) the ALJ improperly discounted Plaintiff's mental
limitations in his credibility determination; (3) the ALJ did not make a credibility determination
concerning Plaintiff's mother; and (4) the ALJ was not sufficiently specific in his reasoning
regarding Plaintiff's credibility.

First, Plaintiff contends that the ALJ should not have considered Plaintiff's work at
McDonald's in assessing his credibility.  Plaintiff states that such work was "obviously
sympathetic sheltered work," and thus should not be used to show that Plaintiff has the ability to
perform substantial gainful activity.  (#10, pp.10-11.)  Under federal regulations, work that is
done under special conditions that take into account impairments may be discounted as evidence
that claimant is able to do substantial work.  *See* 20 C.F.R. § 416.973(c).  However, Plaintiff's
assertion that his work at McDonald's is such "sheltered work" is unsupported by the record;
there is  no evidence to support the premise that the limited hours worked by Plaintiff constituted
"special conditions that take into account [his] impairment," as required by 20 C.F.R. §
416.973(c).

Additionally, Plaintiff cites case law to support the idea that, given the low number of
hours he worked at McDonald's, Plaintiff's previous work history should not be used to assess
Plaintiff's credibility.  *E.g. Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).  However,

12

the cases cited by Plaintiff do not attack the use of employment history and other activities when assessing subjective symptoms; instead, they address the relative weight given to such factors in those particular cases.  Thus, the Court cannot conclude that the ALJ erred by considering Plaintiff's work activity when he assessed Plaintiff's credibility.

Second, Plaintiff contends that the ALJ's credibility determination wrongly found him not to suffer from mental impairments.  Plaintiff contends that the ALJ should have considered Plaintiff's testimony that "Plaintiff was in special education classes, has difficulty reading, writing, and completing schoolwork, has difficulty reading and following the lines, needed both speech and physical therapy . . . , had vision trouble due to a lazy eye, and had difficulty talking, sitting, standing, and walking."  (#10, p. 8.)  Although this testimony indicates that Plaintiff had some limitations, it does not show that Plaintiff had any mental impairments that would interfere with Plaintiff's ability to perform substantial gainful employment.

Third, Plaintiff objects to the ALJ's failure to make a credibility finding as to the testimony of Joann Mendenhall.  (R.  217).  Ms. Mendenhall's testimony was essentially limited to confirming Plaintiff's testimony and his plans to attend school in Florida later that year. (R. 216-18.)  In cases where, as here, testimony is essentially redundant, "the ALJ need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson v.  Shalala*, 999 F.2d 180, 181 (7th Cir.  1993).  Therefore, the ALJ did not err by failing to make credibility findings regarding Ms. Mendenhall.

The ALJ did, however, err in his treatment of other symptoms testified to by Plaintiff. According to Social Security Ruling 96-7p (hereinafter "SSR 96-7p"), symptoms, including pain, of a medically determinable impairment can affect a person's ability to function in the workplace for the purposes of determining disability.  SSR 96-7p provides as follows:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the

individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

SSR 96-7p.  Under SSR 96-7p, "when evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  Furthermore, "*allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.*"  *Id.*  Rather, "assessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all the evidence in the case record."  *Id.*  SSR 96-7p states that the ALJ should consider the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

Despite the latitude given to an ALJ's credibility determination, a credibility assessment "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citing SSR 96-7p).

The ALJ did not meet this standard.  First, the ALJ's credibility assessment failed to adequately address the symptoms to which Plaintiff testified.  Specifically, Plaintiff testified that both fatigue and pain limited his ability to sit and stand for particular periods of time.  (R. 213.)  Either of these symptoms could arise from cerebral palsy and would limit Plaintiff's ability to perform work.  However, the ALJ's dismissal of Plaintiff's testimony as "not fully credible" mentions only his testimony regarding fatigue, and does not refer to his testimony that he experienced pain while sitting and standing.  (R. 22.)  As a result, it is unclear whether the ALJ considered Plaintiff's purported pain.  "[W]hen the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'"  *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir. 1984) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)).  Because the ALJ failed to mention Plaintiff's testimony regarding pain, the Court cannot properly review the credibility determination.

In addition to the ALJ's failure to address Plaintiff's testimony regarding pain, the reasons the ALJ gave for discounting Plaintiff's credibility are insufficient to allow proper judicial review.  The ALJ stated that "claimant's testimony . . . when compared against the objective evidence and evaluated using factors in SSR 96-7p, was not fully credible . . . ."  (R. 22.)  The ALJ referred to "the opinions of the reviewing physicians as well as the claimant's part-time work activity."  (R.  22.)  However, he failed to explain what particular objective evidence contradicted Plaintiff's testimony, and he did not explain how Plaintiff's working three to four hours per week undermined his credibility as to his testimony regarding fatigue and pain.

The ALJ's failure to explain his ruling is especially crucial here, given the fact that the VE found that, were Plaintiff's testimony credited, it would preclude work.  (R.  223)  This Court will not overturn ALJ credibility assessment unless the plaintiff can show that those findings are patently wrong.  *Urban*, 799 F. Supp. at 911.  Here, however, the ALJ's explanations for dismissal of Plaintiff's testimony are inadequate for proper judicial review.  Accordingly, on remand, the Court directs the ALJ to explain the basis for his credibility assessment, including consideration of the factors in SSR 96-7p.

### V.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment **(#9)** be **GRANTED,** Defendant's Motion for an Order which Affirms the Commissioner's Decision **(#12)** be **DENIED**, and the case be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings consistent with this recommendation.  Remand pursuant to 42 U.S.C. § 405(g), sentence four, will terminate the case.  *Schalala v. Schaefer*, 509 U.S. 292, 299 (1993) (a sentence-four remand order terminates the case).

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this

_____s/ DAVID G. BERNTHAL_____
U.S. MAGISTRATE JUDGE